Charles M. Walker
U.S. Bankruptcy Judge
Dated: 1/13/2017



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No: 15 – 03817 |
| Mountain Glacier LLC, ) | Chapter 11 |
| Debtor. ) | Honorable Charles M. Walker |
| _____) | |
| ) | |
| Mountain Glacier LLC, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. No 3:16-ap-90113 |
| ) | |
| Nestle Waters North ) | |
| America, Inc. ) | |
| Defendant. ) | |
| _____) | |

**Memorandum Opinion**

Before the court is the reorganized debtor, Mountain Glacier, LLC's (the "Debtor") adversary Complaint against Nestle Waters North America, Inc. ("Nestle") seeking declaratory judgment pursuant to 28 U.S.C. § 220. The Debtor seeks a determination as to whether the Debtor's confirmed plan of reorganization preserved its interest in and right to pursue a prepetition claim against Nestle. The Debtor now seeks summary judgment.

**<u>Jurisdiction</u>**

Nestle sought to withdraw the reference by motion to the District Court for the Middle District of Tennessee. In its order denying Nestle's motion to withdraw, the district court found that this matter is a "core proceeding" as it involved the interpretation of an order from another court. The district court declined to take on

1

Case 3:16-ap-90113   Doc 60   Filed 01/13/17   Entered 01/13/17 13:58:57   Desc Main
Document      Page 1 of 16

that task, and denied the motion to withdraw the reference. [ECF Doc. 53, at 3] Therefore, this court may conduct appropriate proceedings and enter a final order in this matter. 28 U.S.C. § 157(b)(1).

## Background

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code[1] on June 3, 2015 and filed its amended and restated plan of reorganization on February 15, 2016 (the "Plan"). This court entered an order confirming that Plan on February 17, 2016 (the "Order").

Prior to the commencement of this Chapter 11 case, the Debtor and Nestle were parties to an arbitration styled *Nestle Waters North America, Inc. v. Mountain Glacier LLC*, administered by Judicial Arbitration and Mediation Services in Chicago, Illinois for which the arbitrator is Hon. Nan Nolan (the "Arbitration"). The Arbitration was stayed by the filing of the Chapter 11 petition. The Arbitration had been fully disclosed on Debtor's Schedule B, Personal Property, as a "contingent and unliquidated" claim.

Following the effective date of the Plan, the Debtor sought to further pursue its claims against Nestle in the Arbitration. Nestle responded by requesting dismissal of the Arbitration because the Order did not contain language sufficient to preserve the claims in the Arbitration. Failure to properly preserve the claims would trigger *res judicata* and prohibit the Debtor from further pursuing the Arbitration claims. The Debtor disputes this position and through this adversary proceeding, seeks declaratory judgment interpreting the Plan and Order.

---

[1] 11 U.S.C. § 101 *ff*. Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

2

Case 3:16-ap-90113    Doc 60    Filed 01/13/17    Entered 01/13/17 13:58:57    Desc Main
Document      Page 2 of 16

## Joint Pretrial Statement

The pretrial statement submitted jointly by the parties asserted the following legal issues:

1. Whether this matter is a core proceeding in which this Court may issue a final order.
2. Whether the Debtor's claims against Nestle in the Arbitration are barred, in whole or in part, for lack of jurisdiction.
3. Whether the Debtor's claims against Nestle in the Arbitration are barred, in whole or in part, by the doctrines of waiver, estoppel, laches and/or ratification.
4. Whether the Debtor's claims against Nestle in the Arbitration are precluded by the doctrine of *res judicata* by the entry of the Confirmation Order.

## The Disclosure Statement and Plan

A determination of the above-referenced issues requires an examination and interpretation of the language and provisions subject to the Order, specifically, the relevant sections of the Disclosure Statement and the Plan. The Debtor's Disclosure Statement Accompanying Debtor's Amended Plan of Reorganization was filed December 9, 2015 [ECF Doc. 169], and provides in relevant part:

> **III. SUMMARY OF ASSETS**
> **B. Accounts and Causes of Action.**
> \*\*\*
> The Debtor also has certain claims against parties in pending litigation that were in existence prior to the commencement of this case. These matters include a counterclaim asserted by the Debtor's principal, Jay Peterson, against State Bank of Herscher in district court litigation pending in the Central District of Illinois and a counterclaim asserted by the Debtor against Nestle Waters North America, Inc. in arbitration pending in Chicago, IL before Arbitrator

Nan Nolan. Since the litigation of these actions were stayed as to the Debtor upon the commencement of this Chapter 11 case, these claims remain unliquidated and have unknown value.

\*\*\*

## IV. SUMMARY OF LIABILITIES

\*\*\*

**C. Unsecured Debt.**

The Debtor's unsecured debt, as reflected on the Debtor's Schedules, is approximately $1,620,180.32. Most of the unsecured debt is outstanding trade obligations, with the largest claims being $207,331.00 owed to a related company, Evansville Bottling, and a disputed claim asserted by Nestle Waters in the amount of $581,642.26. Additionally the Debtor has unsecured deficiency claims owing to Herscher in the approximate amount of $3 million and BFS in the principal amount of $508,315.

## V. LIQUIDATION ANALYSIS

For this Plan to be approved by the Court, a determination may be necessary that the Plan will provide to each creditor or equity security holder an amount, as of the Effective Date of the Plan, that is not less than the value of the property that each such creditor would receive or retain if all of the assets of the Debtor were sold and the proceeds thereof were distributed under Chapter 7 of the Bankruptcy Code.

Since the Debtor is a service company, there is very little value in real or personal property. As stated above in Article III, the Debtor leases its real property and vehicles, thus leaving customer lists, inventory and accounts receivable as it primary assets of value. The book value of these assets is approximately $5 million and a liquidation value would be significantly less. Further, these assets are encumbered by the secured debt described in Article IV above in an amount that is greater than the liquidation value of these assets. In a liquidation, the assets would be liquidated and applied to the secured debt, leaving no distribution to the unsecured creditors and the equity interests.

> **VI. SUMMARY OF PLAN**
> **A. Payment of Claims.**
> ***
>
> <u>Class 5.</u> Class 5 consists of all Allowed Unsecured Claims that are not otherwise included in another Class herein and shall include the unsecured deficiency claim of State Bank of Herscher and the Allowed Claim of Business Finance Services. Except as otherwise provided below, these Claims shall be paid in the aggregate amount equal to ten percent (10%) of the Allowed Unsecured Claim in ten (10) semi-annual installments paid without interest over a period of five years with the first installment beginning on June 30, 2016 and thereafter on December 31, 2016 and then semi-annually until a final installment on December 31, 2020.
> ***
> **D. Implementation of the Plan.**
> ***
>
> Upon Confirmation, the Reorganized Debtor will retain all Property of the Estate, including Causes of Action as defined in the Plan. The Reorganized Debtor will have the power and authority to settle and compromise any Cause of Action or any Disputed Claim without further notice or Court approval.

[ECF Doc. 169.]

The Debtor's Amended and Restated Plan ("Plan") dated February 9, 2016 [ECF Doc. 203] provides in relevant part:

> **ARTICLE II**
> **<u>DEFINITIONS</u>**
> ***
>
> 2.03 "<u>Allowed Claim</u>" shall mean payable under the Plan in the amount allowed for payment under the Bankruptcy Code. For the purposes of this Plan, a Claim will be deemed an Allowed Claim as follows: (i) the amount scheduled by the Debtors and not otherwise marked by the Debtor as being contingent, disputed or unliquidated, or (II) the amount evidenced by a proof of claim filed with the Court as of the Effective Date of the Plan. Any Claim or Administrative Expense that is the subject to an objection filed by any party in

5

interest as to its amount shall not be an Allowed Claim in any amount for purposes of distribution until the objection has been resolved by agreement or final order.
\*\*\*
      2.07 "Causes of Action" shall mean all claims that the Debtor had as of the Effective Date of the Plan against any party, including, but not limited to claims against State Bank and Nestle Waters North America, Inc. in the litigation further described in Debtor's Disclosure Statement.
\*\*\*
      2.22 "<u>Property</u>" shall mean all assets in which any Debtor has an interest as of the Effective Date of the Plan, plus, unless otherwise stated herein, assets acquired after the Date of Filing.
\*\*\*

**ARTICLE IV**
**<u>TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND U.S. TRUSTEE FEES</u>**
      \*\*\*

<u>Class 5 Allowed Unsecured Claims</u>
Class 5 shall consist of all Allowed Unsecured Claims that are not otherwise included in another Class herein and shall include the unsecured deficiency claim of State Bank of Herscher and the Allowed Claim of Business Finance Services. Except as otherwise provided below, these Claims shall be paid in the aggregate amount equal to ten percent (10%) of the Allowed Unsecured Claim in ten (10) semi-annual installments paid without interest over a period of five years with the first installment beginning on June 30, 2016 and thereafter on December 31, 2016 and then semi-annually until the final installment on December 31, 2020.
\*\*\*

**ARTICLE VIII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**
      \*\*\*

      8.02 <u>Transfer of Assets</u>. As of the Effective Date of the Plan and except as otherwise provided herein, all Property of the Debtor will be transferred to the Reorganized Debtor free and clear of all claims, including the Causes of Action except as otherwise provided herein.

\*\*\*

**ARTICLE IX**
**GENERAL PROVISIONS**
　　　\*\*\*

　　9.02 <u>Retention of Claims</u>. Pursuant to § 1123(b)(3)(B) of the Code, the Reorganized Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code. To the extent permitted by applicable law, these actions may be pursued by the Reorganized Debtor after Confirmation and may be commenced or continued in any appropriate court or tribunal for the enforcement of same.
　　　\*\*\*

　　9.08 <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.
[ECF Doc. 203]

## Analysis

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Cellotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir. 1989). The court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.'" *Id*. (quoting *Liberty Lobby*, 477 U.S. at 252).

Here, the parties agree, and the court finds, that there are no disputed facts of a material nature, therefore, this matter is ripe for summary judgment.

### B. Legal Issues

**(1) Core Proceeding**

As to the first issue, the district court concluded that interpretation of the Order was a core proceeding. The case law overwhelmingly supports this conclusion. *See, e.g., In re Sunnyland Farms, Inc.*, No. 14-10231-t11, 2016 WL 1212723, *2 (Bankr. D.N.M. Mar. 28, 2016) ("There is little question that interpretation of the language of a confirmed plan involving distribution to creditors is within the core jurisdiction of the Court.") (citing *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 98 (Bankr. S.D.N.Y. 2006); *In re Thickstun Bros. Equip. Co.*, 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006); *Donaldson v. Bernstein* (*In re Donaldson*), 104 F.3d 547 (3d Cir. 1997) (interpretation of the plan will have the requisite close nexus to the bankruptcy case). Therefore, this court may conduct appropriate proceedings and enter a final order in this matter. 28 U.S.C. § 157(b)(1).

**(2) Lack of Jurisdiction**

As to the second issue, to the extent Nestle challenges the court's jurisdiction as to the "related to" status of the claim asserted by the reorganized Debtor in the Arbitration ("Arbitration Claim"), 28 U.S.C. § 1334(b) states, in part, as follows:

> the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or <u>related</u> to cases under title 11. (Emphasis added).[2]

---

[2] The District Court for the Middle District of Tennessee has referred all bankruptcy cases to this court pursuant to 28 U.S.C. § 157(a).

Of the jurisdictional sources provided by 28 U.S.C. § 1334, "related to" jurisdiction is the broadest. It is intended to "grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate." *Celotex Corp v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499, 131 L. Ed. 2d 403 (1995), *see also H.R.Rep. No. 95-595*, pp. 43-48 (1977). Moreover, it is well settled that "the Bankruptcy Court . . . [has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009), *In re Lacy*, 304 B.R. 439, 444 (D. Colo. 2004) ("After confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization."). This is not a case where the court is being asked to rule on the merits of a cause of action. All this court is being asked to do is interpret its own order and accordingly, the court has jurisdiction to enter judgment in this matter.

### (3) The Effect of the Doctrines of Waiver, Estoppel, Laches and/or Ratification on the Debtor's Claims Against Nestle

Although Nestle did not address these issues in the context of this summary judgment motion, it is unclear whether Nestle intended to waive these issues. Moreover, the Debtor did address each, therefore, the court will attend to each in turn.

### a. Waiver

Waiver is the voluntary relinquishment of a known right. *See Patton v. Beardon*, 8 F.3d 343, 346 (6th Cir. 1993); *In re B.J. Thomas, Inc.*, 45 B.R. 91, 95 (Bankr. M.D. Fla. 1984); *In re Erickson Retirement Communities, LLC*, 425 B.R. 309 (Bankr. N.D. Tex. 2010). Here, the Debtor has taken no steps to voluntarily relinquish its rights under the Arbitration Claim, and no provision of the Plan or

9

Disclosure Statement suggests otherwise. To the contrary, the Debtor specifically referred to the Arbitration Claim as a transferred asset to the Reorganized Debtor. The Arbitration Claim is therefore not barred by waiver.

### b. Estoppel

Like waiver, estoppel does not apply here. Estoppel occurs when the same parties or their privies are barred "from re-litigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding." *In re Vinsant*, 539 B.R. 351, 357 (Bankr. E.D. Tenn. 2015). Nothing in the Order suggests a determination of the Arbitration Claim, consequently, estoppel does not apply here.

### c. Laches

The essence of the doctrine of laches is that a party has unreasonably delayed asserting a cause of action, and that the other party has suffered prejudice due to that delay. *In re Mandrell*, 39 B.R. 455 (Bankr. M.D. Tenn. 1984). The Debtor asserted the Arbitration Claim prior to filing this Chapter 11 case. Further, the Debtor referred to the claim in the Plan and the Disclosure Statement, thereby expressing its intention to transfer the Arbitration Claim to the reorganized Debtor. Moreover, Nestle could not have been prejudiced even if the Plan and Disclosure Statement were not straightforward and clear on the transfer of the Arbitration Claim. Nestle chose not to file a proof of claim, vote, or otherwise participate in the Debtor's case and confirmation of the Plan. Therefore, Nestle had taken no action in reliance of any statement made by the Debtor, and laches does not apply.

### d. Ratification

The Arbitration Claim is not barred by ratification. "Ratification" is defined in Black's Law Dictionary as, among other things, "A person's binding adoption of

10

Case 3:16-ap-90113    Doc 60    Filed 01/13/17    Entered 01/13/17 13:58:57    Desc Main
Document      Page 10 of 16

an act already completed but either not done in a way that originally produced a legal obligation, or done by a third party having at the time no authority to act as the person's agent." *Ratification, Black's Law Dictionary* (10th ed. 2014). This theory does not make sense under these facts since no prior actions have been alleged to have been taken by the Debtor to bar the Arbitration Claim for which the Plan would ratify.

### (4) *Res Judicata* Effect of the Confirmed Plan

Finally, essential to a determination in this case is the answer to the fundamental question of whether the Plan language was sufficient to preserve the Arbitration claims. The confirmation of a Chapter 11 plan of reorganization triggers the doctrine of *res judicata* as to causes of action held by the estate.

> Such confirmation by a bankruptcy court "has the effect of judgment by the district court and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Id* citing *In re Chattanooga Wholesale Antiques, Inc*., 930 F.2d 458, 463 (6th Cir. 1991).

*Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).

In order to overcome the *res judicata* effect of plan confirmation on estate assets consisting of causes of action, the Plan must reserve the right of the reorganized debtor to retain those actions. Section 1123(b)(3) codifies such preservation, providing that a Chapter 11 plan may:

> provide for-(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, or any claim or interest[.]

11 U.S.C. § 1123(b)(3).

Retention of claims under a plan of reorganization does not occur automatically. Section 1123(b)(3)(B) provides: "a plan *may* . . . provide for . . . the retention and enforcement by the debtor" of any claim or interest belonging to the debtor or the estate. 11 U.S.C. § 1123(b)(3)(B) (emphasis added). It is therefore permissive and must be articulated in the Plan.

The specificity of that articulation is the subject of controversy amongst the circuits. "What constitutes an effective reservation of claims in a chapter 11 plan is a controversial question" upon which the "only area of agreement" is that a plan can in fact reserve claims by virtue of § 1123(b)(3)(B). *In re Commercial Loan Corp.*, 363 B.R. 559, 567 (Bankr. N.D. Ill. 2007). The standards fall into roughly three camps, "the first maintaining that general reservations of claims are sufficient. . . . The other two camps require some degree of specificity (ranging from precise identification of each claim to a description of merely the categories of claims reserved) but differ as to the legal basis for that requirement; one camp bases it on principles of *res judicata* and the other on the 'notice' function served by section 1123(b)(3)(B*)." In re Equipment Acquisition Res.*, 483 B.R. 823, 828-829 (Bankr. N.D. Ill. 2012).

a. **Adequacy of Plan Provisions**

The Sixth Circuit has spoken on this issue and under certain circumstances requires some specificity in plan retention language. In *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), the court dealt with language indistinguishable from that in section 9.02 of the Debtor's Plan here, and found that language to be insufficient to retain claims and defeat the application of *res judicata*. Such a blanket reservation was insufficient to advise the bankruptcy court and other parties to the case of the value of the debtor's claims. *Id.* at 775. By not identifying the claims by name, and failing to provide a value or a factual basis for the reserved claims, that

12

section of the plan merely provided a blanket reservation and as such, failed to defeat the application of *res judicata* and reserve the claims. *Id.*

However, in *In re Penn Holdings*, the court considered the issue in light of *Browning* and determined that even a general reservation of claims, which by itself might lack the necessary specificity to reserve a cause of action, can be sufficient to survive *res judicata* based on the totality of the information contained in the plan and disclosure statement. 316 B.R. 495 (Bankr. M.D. Tenn. 2004). In *Penn Holdings*, the court analyzed the language and legislative history behind § 1123(b)(3). *Id.* The court determined that "[p]erhaps the rule to draw from *Browning* . . . is that a general reservation of 'causes of action' is not specific enough in the Sixth Circuit to avoid the *res judicata* effect of confirmation with respect to a malpractice action against counsel to the debtor or to the trustee." *Id.* at 503. In *Penn Holdings*, Judge Lundin construed *Browning* as follows:

> *Browning* does not establish a general rule that naming each defendant or stating the factual basis for each cause of action are the only ways to preserve a cause of action at confirmation of a Chapter 11 plan. Read in the context of its history, § 1123(b)(3) protects the estate from loss of potential assets. It is not designed to protect defendants from unexpected lawsuits. The words sufficient to satisfy § 1123(b)(3) must be measured in the context of each case and the particular claims at issue: Did the reservation allow creditors to identify and evaluate the assets potentially available for distribution?

*Id.* at 504. In *Penn Holdings*, the Debtor's blanket language regarding the retention of preference actions, taken in conjunction with the disclosure statement and the liquidation analysis attached to the plan, was sufficient to preserve preference actions to the reorganized debtor. *Id.* The same situation exists here. Although the Plan contains the same "blanket" language, the Plan specifically references provisions in the Disclosure Statement that make the Debtor's intent clear: the Arbitration Claim is reserved to the reorganized debtor.

13

Nestle makes much of the Debtor's failure to capitalize the term "causes of action" in section 9.02 of the Plan dealing with retention of claims. Nestle argues that although the Plan specifically reserves all "causes of action", it does not reserve all "Causes of Action" which is the term that includes the Arbitration Claim, and the failure to use the term as defined in section 2.07 of the Plan works to exclude the defined term and, therefore, the Arbitration Claim. However, the failure to capitalize the term is not fatal to the Debtor's retention of the Arbitration Claim. There are sufficient other references and information regarding the Arbitration Claim that clearly identify it as an asset the reorganized debtor intended to retain and pursue post-confirmation. As Judge Lundin put it:

> Nothing in § 1123(b)(3) suggests such specificity is required. The history of § 1123(b)(3) suggests just the opposite—that preserving the value of preferences for distribution to creditors after confirmation should be easily accomplished in the plan without magic words or typographical traps.

*Id.* at 505. Although *Penn Holdings* dealt with the retention of avoidance actions, the basic reasoning applies here. Following the test articulated in *Penn Holdings*, this court must determine whether the reservation is sufficient to "allow creditors to identify and evaluate the assets potentially available for distribution," by reading all relevant Plan provisions in conjunction with the Disclosure Statement. *Id.* at 504. Here, when section 9.02 of the Plan is read in conjunction with section 8.02, other relevant plan provisions as designated above, and the Disclosure Statement, creditors are able to clearly see that the Arbitration Claim is expressly included among the means for implementing the Plan, and work to protect the estate from the loss of those assets that are in the form of causes of action. Furthermore, the language is sufficient to designate the Arbitration Claim as a reserved asset, and inform that upon resolution, the claim may be available for distribution. *Id.*

14

## **Conclusion**

By applying the reasoning and analysis in *Browning* and *Penn Holdings*, it is clear that the language of the Plan, along with the Disclosure Statement, is sufficient to reserve the Arbitration Claim to the reorganized Debtor, thereby defeating the *res judicata* effect of plan confirmation. Judgment will be entered accordingly in favor of the Debtor.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No: 15 – 03817 |
| Mountain Glacier LLC, | ) | Chapter 11 |
| Debtor. | ) | Honorable Charles M. Walker |
| | ) | |
| | ) | |
| Mountain Glacier LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No 3:16-ap-90113 |
| | ) | |
| Nestle Waters North | ) | |
| America, Inc. | ) | |
| Defendant. | ) | |
| | ) | |

## APPEARANCES

**WILLIAM L NORTON, III**
**DIANE ABBOTT**
BRADLEY ARANT BOULT CUMMINGS LLP
PO Box 340025
Nashville, TN 37203
615 252-2397
Fax: 615-252-6397

**ROBERT S HERTZBERG**
**DEBORAH KOVSKY-APAP**
PEPPER HAMILTON LLP
4000 Town Center Suite 1800
Southfield, MI 48075-1505
248-359-7333
Fax: 313-731-1556

**JOHN HAYDEN ROWLAND**
BAKER DONELSON BEARMAN ET AL
211 Commerce Street Suite 800
Nashville, TN 37219
615 726-5544
Fax: 615 744-5544

**THE HONORABLE CHARLES M. WALKER**
**UNITED STATES BANKRUPTCY JUDGE**

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.